TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
TIANDE WANG,
LU YANG, and
YA XU
*on their own behalf and on behalf of others similarly situated*

                      Plaintiffs,

                      v.

KIRIN TRANSPORTATION INC.
    d/b/a Kirin Transportation;
QIANG CHEN
    a/k/a Frank Chen,
MARRIANA YUHUA SONG
    a/k/a Nancy Song, and
QIUXIANG SHI
    a/k/a Qiu Xiang Shi

                      Defendants.
-------------------------------------------------------------------x

Case No. 21-cv-03254

**29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs TIANDE WANG, LU YANG and YA XU (hereinafter referred to as Plaintiffs), on behalf of themselves and others similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint against Defendants KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation; QIANG CHEN a/k/a Frank Chen, MARRIANA YUHUA SONG a/k/a Nancy Song, and QIUXIANG SHI a/k/a Qiu Xiang Shi, and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and other similarly situated employees against Defendants for violations of Section 215, subsection (a), paragraph (3) of the

Fair Labor Standards Act ("FLSA") and of Section 215, subsection 1, paragraph (a), subparagraph (iii) of the New York Labor Law ("NYLL"), arising from Defendants' willful, malicious, and unlawful retaliation against Plaintiffs for engaging in protected activity.

2. Plaintiffs allege pursuant to Section 216, subsection (b) of the FLSA that they are entitled to recover from the Defendants: (1) lost wages, (2) liquidated damages equal to lost wages, (3) prejudgment and postjudgment interest, (4) reasonable attorneys' fees and costs, (5) injunctive relief, (6) a declaration that the practices complained of are unlawful, and (7) any such other and further legal and equitable relief as will effectuate the purposes of Section 215(a)(3) of the FLSA.

3. Plaintiffs further allege pursuant to Section 215, subsection 2, paragraph (a) of the NYLL that they are entitled to recover from the Defendants: (1) lost wages, (2) liquidated damages equal to lost wages but not more than $20,000.00, (3) prejudgment and post-judgment interest, (4) reasonable attorneys' fees and costs, (5) injunctive relief, (6) a declaration that the practices complained of are unlawful, and (7) any such other and further legal and equitable relief as will effectuate the purposes of Section 215.1(a)(iii) of the NYLL.

4. Notice of the commencement of this action was served on the Attorney General of the State of New York concurrently with the commencement of this action, pursuant to Section 215, subsection 2, paragraph (a) of the NYLL.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

6. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

7. Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place in this District.

## PLAINTIFFS

8. From on or about November 2015 through March 2017, and from April 2019 through December 02, 2021, Plaintiff TIANDE WANG was employed by Defendants to work as a Commuter Van Driver.

9. From on or about May or June of 2017 through March of 2021, Plaintiff LU YANG was employed by Defendants to work as a Commuter Van Driver.

10. From on or about 2017 through March of 2021, Plaintiff YA XU was employed by Defendants to work as a Commuter Van Driver and also as marketing of Kirin Transportation.

## DEFENDANTS

*Corporate Defendants*

11. Defendant KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation is a domestic business corporation organized under the laws of the State of New York with a principal address at 142-04 Bayside Ave., Suite 7L, Flushing, NY 11354.

12. KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

13. KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation purchased and handled goods moved in interstate commerce.

*Individual Defendants*

14. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

15. QIANG CHEN a/k/a Frank Chen known as Boss to Plaintiff and CEO of KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

16. QIANG CHEN a/k/a Frank Chen fired MARRIANA YUHUA SONG a/k/a Nancy Song, who worked as the Manager in 2018.

17. QIANG CHEN a/k/a Frank Chen fired ZHANG HAO, an office staff member in summer 2016.

18. QIANG CHEN a/k/a Frank Chen fired a female office staff member, also in summer 2016.

19. QIANG CHEN also hired receptionist QIAN WANG a/k/a Sarah Wang.

20. QIANG CHEN also hired HAISHENG LU a/k/a Henry Lu in 2016.

21. QIANG CHEN calculated the pay to be disbursed to Kirin Transportation employees.

22. QIANG CHEN a/k/a Frank Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29

C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

23.     MARRIANA YUHUA SONG a/k/a Nancy Song known as CEO and Manager to Plaintiff and CEO of KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation since March 8, 2019, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

24.     MARRIANA YUHUA SONG a/k/a Nancy Song fired Plaintiff LU YANG in February or March of 2021.

25.     MARRIANA YUHUA SONG a/k/a Nancy Song fired Plaintiff YA XU in February or March of 2021.

26.     MARRIANA YUHUA SONG a/k/a Nancy Song fired Plaintiff TIANDE WANG in December of 2020.

27.     MARRIANA YUHUA SONG a/k/a Nancy Song fired HAISHENG LU in May 2020.

28.     MARRIANA YUHUA SONG a/k/a Nancy Song fired STEVEN TANG in April 2019.

29.     MARRIANA YUHUA SONG a/k/a Nancy Song and QIANG CHEN a/k/a Frank Chen together fired HAO ZHANG.

30.     MARRIANA YUHUA SONG a/k/a Nancy Song hired ZHANHUI SHI in April 2019.

31.     MARRIANA YUHUA SONG a/k/a Nancy Song hired ZUJIAN JIANG in April

2019.

32. MARRIANA YUHUA SONG a/k/a Nancy Song hired her son, XIAOMING ZHENG, in September 2019.

33. MARRIANA YUHUA SONG a/k/a Nancy Song hired YANDONG PAN in November 2019.

34. MARRIANA YUHUA SONG a/k/a Nancy Song calculated the pay to be disbursed to Kirin Transportation employees.

35. MARRIANA YUHUA SONG a/k/a Nancy Song acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

36. QIUXIANG SHI a/k/a Qiu Xiang Shi known as Big Boss to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

37. QIUXIANG SHI a/k/a Qiu Xiang Shi fired receptionist MARK in March 2020.

38. QIUXIANG SHI a/k/a Qiu Xiang Shi has the ultiamte decision-making power, and MARRIANA YUHUA SONG a/k/a Nancy Song defers to her decision.

39. QIUXIANG SHI a/k/a Qiu Xiang Shi acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

## STATEMENT OF FACTS

40. On December 02, 2020, Plaintiff TIANDE WANG opted into a lawsuit, *Wang et al. v Kirin Transportation Inc.,* 20-cv-05410 (KAM) (VMS), (E.D.N.Y.) (the "Wage-and-Hour Action"), seeking unpaid wages and overtime pay under the FLSA and NYLL.

41. Plaintiffs LU YANG and YA XU opted into the aforementioned Wage-and-Hour Action on February 22, 2021.

42. Plaintiffs each alleged in the Wage-and-Hour Action that they were owed unpaid wages and wages for all of their hours and all of their overtime hours worked.

### *Plaintiff TIANDE WANG*

43. From on or about November 2015 through March 2017, and again from April 2019 through December 02, 2020, Plaintiff TIANDE WANG was employed by Defendants to work as a commuter van driver.

44. Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and the senior centers.

45. Plaintiff was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

46. Throughout the course of employment with Defendants, Plaintiff's car was not for hire by individual members fo the general public.

47. In or around November 25, Defendant MARRIANA YUHUA SONG a/k/a Nancy Song notified Plaintiff WANG that she knew that Plaintiff TIANDE WANG's daughter, QIAN WANG a/k/a Sarah Wang ("Sarah Wang") initiated the Wage-and-Hour Action.

48. On about December 02, 2020, Plaintiff TIANDE WANG received an email, indicating that his daughter, Sarah Wang, had been suspended.

49. Since December 02, 2020, Plaintiff TIANDE WANG was still owed his pay for November of 2020, and he learned that other drivers working for Defendants had received their paycheck for that month, except him.

50. On December 03, 2020, Plaintiff TIANDE WANG received an email saying he was suspended because of some false accusations in violation of company's policies.

51. Since then, Plaintiff TIANDE WANG has never been reinstated to his position as a commute van driver for Defendants.

52. On December 06, 2020, Plaintiff TIANDE WANG and Sarah Wang filed their first motion for order to show cause ("first OTSC") in the Wage-and-Hour Action, seeking reinstating to their former position, temporarily restraining and enjoining Defendants from engaging in further retaliation against themselves and other employees.

53. On or around December 14, 2020, Plaintiff TIANDE WANG received a letter via mail on behalf of Defendants, informing his suspension, in which listed a couple of false accusations in violation of the company's internal policies.

54. On February 15, 2021, Sarah Wang told Plaintiff TIANDE WANG that Nancy Song had already prepared a release and settlement agreement and promised that whoever signed this agreement will be paid with 30% of all the wages owed to them, provided that the employees must sign it for the pay.

55. On February 25, 2021, Plaintiffs TIANDE WANG, YA XU, LU YANG, and Sarah Wang renewed their motion for injunctive reliefs ("second OTSC") in the Wage-and-Hour Action, supported by newly discovered facts.

56. After his termination, Defendants were still engaging in other improperly retaliatory activities against Plaintiffs TIANDE WANG, LU YANG, and YA XU.

57. In or around May of 2021, Plaintiff TIANDE WANG began receiving calls and messages from his current customers who were former clients or "members" of the Defendants and who also received letters written on behalf of Kirin Transportation stating that Defendants had filed another lawsuit against Plaintiff TIANDE WANG for the cause of his engagement in the alleged "insurance fraud" and "stealing customers away from Kirin Transportation in violation of the company's internal policies."

58. All the above accusations in these letters were false and meritless.

59. These letters, however, had caused severely negative impact against Plaintiff TIANDE WANG's current job as a commute van driver, because his customers were very anxious about being forced into any disputes or lawsuit.

60. In fact, Plaintiff TIANDE WANG is on the verge of losing customers and his job for making living due to Defendants' aggravated misconducts that seriously destroyed his established reputation and trust with his current customers.

*Plaintiff LU YANG*

61. From on or about May or June of 2017 through March of 2021, Plaintiff LU YANG was employed by Defendants to work as a commuter van driver.

62. Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and the senior centers.

63. Plaintiff LU YANG was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

64. Throughout the course of his employment with Defendants, Plaintiff's car was not for hire by individual members for the general public.

65. On or around December 20, 2020, Nancy Song met Plaintiff LU YANG at her

office and tried know who had sued the Defendants in the Wage-and-Hour Action. Nancy Song said whoever sued the company would not be paid, and she will prepare a release and settlement agreement for the employees who were owed unpaid wages to sign and to get pay.

66. On or around January of 2021, Nancy Song met Plaintiff LU YANG again and told him that the agreement was ready, asked Plaintiff LU YANG to sign it to get his pay, and she further promised to pay by February 12, 2021 up to 30% of the total amount that Plaintiff LU YANG was owed, provided that he must sign the release agreement.

67. On or around February 08 or 09, 2021, Plaintiff LU YANG called Nancy Song, verifying if he had chance to be paid owed money in what time and when would he get his pay. Nancy Song reiterated the promise she made earlier in or around January of 2021.

68. On February 22, 2021, Plaintiffs LU YANG and YA XU stopped by the Defendants' office and obtained a hard copy of the agreement.

69. On the same day, Plaintiff LU YANG opted into the Wage-and-Hour Action.

70. After deep consideration, Plaintiff LU YANG did not sign the release and settlement agreement nor did he recover any owed wages from Defendants.

71. Sometimes between February 25, 2021 and May of 2021 and following his refusal to sign the agreement, Plaintiffs LU YANG was fired by Defendants.

72. Plaintiff LU YANG was fired because of his participation in the Wage-and-Hour Action and refusal to sign off the release and settlement agreement.

73. After his termination, Defendants were still engaging in other improperly retaliatory activities against Plaintiffs TIANDE WANG, LU YANG, and YA XU.

74. In or around May of 2021, Plaintiff LU YANG began receiving calls from his current customers who were former clients or "members" of the Defendants and who also

received letters written on behalf of Kirin Transportation stating that Defendants had filed another lawsuit against Plaintiff LU YANG for the cause of his engagement in the alleged "insurance fraud" and "stealing customers away from Kirin Transportation in violation of the company's internal policies."

75. All the accusations listed in these letters were false and meritless.

76. These letters, however, had caused severely negative impact against Plaintiff LU YANG's current job as a commute van driver for living, because his customers were anxious about being forced into any disputes or lawsuit.

77. In fact, Plaintiff LU YANG is currently on the verge of losing his customers and his job for making living due to Defendants' aggravated retaliatory malfeasances that seriously destroyed his established reputation and trust with his current customers.

*Plaintiff YA XU*

78. From on or about 2017 through March of 2021, Plaintiff YA XU was employed by Defendants to work as a Commuter Van Driver and also in marketing department worker at 142-04 Bayside Ave, Suite 7L, Flushing, NY 11354.

79. Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and the senior centers.

80. At all relevant times, her primary duty was to promote Defendants' commuter van services at senior centers to those elder people, and she also need to drive whenever the Defendants was in shortage of drivers.

81. Plaintiff YA XU was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

82. Throughout the course of her employment with Defendants, Plaintiff's car was

not for hire by individual members for the general public.

83. Defendant Nancy Song learned the Wage-and-Hour Action between late November and early December, at the latest.

84. On or around February 08 or 09, 2021, Plaintiff LU YANG told Plaintiff YA XU that a release and settlement agreement was prepared by Nancy Song, and she promised to pay 30% of the total amount owed to employees, but employees must sign it to get pay.

85. On February 22, 2021, Plaintiff LU YANG and YA XU stopped by the Defendants' office and obtained a hard copy of the agreement.

86. On the same day, Plaintiff YA XU opted into the Wage-and-Hour Action.

87. After deep consideration, Plaintiff YA XU did not sign the release and settlement agreement nor did she recover any owed wages from Defendants.

88. Sometimes between February 25, 2021 and May of 2021 and following her refusal to sign the agreement, Plaintiff YA XU was fired by Defendants.

89. Plaintiff YA XU was fired because of his participation in the Wage-and-Hour Action and refusal to sign the release and settlement agreement.

90. After her termination, Defendants were still engaging in other improperly retaliatory activities against Plaintiffs TIANDE WANG, LU YANG, and YA XU.

91. In or around May of 2021, Plaintiff YA XU began receiving calls and text messages from her current customers who were former clients or "members" of the Defendants and who also received letters written on behalf of Kirin Transportation stating that Defendants had filed another lawsuit against Plaintiff YA XU for the cause of her engagement in the alleged "insurance fraud" and "stealing customers away from Defendants in violation of the company's internal policies."

92. All the accusations listed in these letters forwarded to Plaintiffs YA XU were false and meritless.

93. These letters, however, had caused severely negative impact against Plaintiff YA XU current job as a commute van driver, because her customers were anxious about being forced into any disputes or lawsuit.

94. In fact, Plaintiff YANG is on the verge of losing customers and his job for making living due to Defendants' aggravated misconducts that seriously destroyed her established reputation and trust with her current customers.

95. Upon information and belief, Defendants were continuously discouraging, dissuading, and intimidating their employees who intend to sue them from engaging in protected converted activities, and blatantly interfering with the Court's right and responsibility to manage the Wage-and-Hour Action and related actions.

96. Defendants committed the foregoing acts knowingly, intentionally, willfully, and maliciously against the Plaintiffs, the Collective, and the Class.

## COLLECTIVE ACTION ALLEGATIONS

97. Plaintiffs brings their state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case, who either opted into the Wage-and-Hour Action or took other protected activities, were laid off in or about November of 2020, and were not rehired and reinstated to their prior positions (the "Class").

## CLASS ACTION ALLEGATIONS

98. Plaintiffs brings their state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt employees

employed by Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case, who either opted into the Wage-and-Hour Action or took other protected activity, were laid off since November 2020, and were not rehired or were rehired with reduced hours or pay (the "Class").

99. The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

*NUMEROSITY*

100. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

101. Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

*COMMONALITY*

102. There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members engaged in protected activity under the NYLL; (3) whether the Class members were laid off since November 2020; (4) whether the Class members and were not rehired or were rehired with reduced hours or pay whether the Class members were paid for overtime hours at rates one and one-half times their regular rates; and (5) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

*TYPICALITY*

103. Plaintiffs' claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

104. All the Class members were subject to the same policy and practice of retaliation for protected activity.

105. Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

106. Plaintiffs and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

*ADEQUACY*

107. Plaintiffs are fairly and adequately able to protect the interests of the Class and have no interests antagonistic to the Class.

108. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

*SUPERIORITY*

109. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

110. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

111. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

112. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

113. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

114. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

115. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

116. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

117. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

118. Class actions provide class members who are not named in the complaint a degree of anonymity allowing for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

**COUNT I.   VIOLATION OF SECTION 215(A)(3) OF THE FLSA—RETALIATION FOR PROTECTED ACTIVITY**
**BROUGHT ON BEHALF OF THE PLAINTIFFS, THE COLLECTIVE, AND THE CLASS**

119. Plaintiffs re-allege and incorporate by reference all preceding statements as though fully set forth herein.

120. The anti-retaliation provision of Fair Labor Standards Act (FLSA) provides, in part, that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter" 29 U.S.C. § 215(a)(3).

121. Plaintiffs have been subjected to adverse employment actions, including, termination, denial of paying owed wages, and dissemination of false accusations to their customers to tarnish their reputation and obstruct their current employment "because of" their engagement in protected participation by enforcing their rights under the FLSA and filing a lawsuit against Defendants for failure to compensate them for all hours worked and for unpaid overtime.

122. Retaliation has been a "motivating" factor in the adverse employment decisions made against Plaintiffs.

123. The Defendants were employers within the meaning of the FLSA, because "employer" as defined by Section 203(d) of the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee" and Defendants were self-consciously acting in the interests of the Association's employer members to protect them from meritorious lawsuits.

124. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section n215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional amount as liquidated damages."

**COUNT II. VIOLATION OF SECTION 215.1(A)(III) OF THE NYLL—
RETALIATION FOR PROTECTED ACTIVITY
BROUGHT ON BEHALF OF THE PLAINTIFFS, THE COLLECTIVE, AND THE
CLASS**

125. Plaintiff re-alleges and incorporates by reference all preceding statements as though fully set forth herein.

126. Section 215.1(a)(iii) of the NYLL provides that "[n]o employer or his agent, or the officer or agent of any corporation, partnership or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee… because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter."

127. Plaintiffs have been subjected to adverse employment actions, including, termination, denial of paying owed wages, and dissemination of false accusations to their customers to tarnish their reputation and obstruct making living "because of" their engagement in protected participation by enforcing their rights under the NYLL and filing a lawsuit against Defendants for failure to compensate them for all hours worked and for unpaid overtime.

128. Section 215.2(a) of the NYLL provides that "[t]he court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee, and to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable

attorneys' fees to the employee by the person or entity in violation…. Liquidated damages shall be calculated as an amount not more than twenty thousand dollars."

## DEMAND FOR TRIAL BY JURY

129.    Pursuant to Rules 38(b) and (c) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

A.    Facilitation of notice of this collective action to prospective opt-in plaintiffs;

B.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

C.    An injunction against the Corporate Defendants, their owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

D.    An award of lost wages, and liquidated damages equal to lost wages, due to Plaintiffs under FLSA;

E.    An award of lost wages, and liquidated damages equal to lost wages up to $20,000.00, due to Plaintiffs and the Class under NYLL;

F.    An award of punitive damages for Defendants' willful retaliation against Plaintiffs and malicious dissemination of false accusations and interruption of their current employment.

G.    An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

H.    An award of reasonable attorneys' fees and costs incurred;

I. An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no appeal then being pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL; and

J. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
June 8, 2021

                                              TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)